IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:13-CV-00231-D

| | |
|---|---|
| STEVEN G. BEST, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-23, DE-27] pursuant to Fed. R. Civ. P. 12(c). Claimant Steven G. Best ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion [DE-30], and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with this Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant filed an application for a period of disability and DIB on July 20, 2010, alleging disability beginning July 9, 2009. (R. 26, 173-81). His claim was denied initially and upon reconsideration. (R. 26, 87-111). A hearing before the Administrative Law Judge ("ALJ") was held on December 28, 2011, at which Claimant was represented by counsel and Claimant's mother and

a vocational expert appeared and testified. (R. 26, 40-86). On April 17, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 26-39). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 21-22), and submitted additional evidence as part of the request (R. 284-92, 393-423). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on August 27, 2013. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence

2

and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant contends the ALJ erred by (1) failing to adequately consider Claimant's approval for long term disability benefits by the state; (2) improperly dismissing the opinions of

3

Claimant's treating physicians; (3) improperly evaluating Claimant's residual functional capacity ("RFC"); and (4) improperly evaluating Claimant's credibility. Pl.'s Mem. [DE-24] at 6-13.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not engaged in substantial gainful employment since the alleged onset date. (R. 28). Next, the ALJ determined Claimant has the severe impairments of fibromyalgia, irritable bowel syndrome/acid reflux status-post surgery, mood disorder, pain disorder, borderline intellectual functioning, personality disorder, and anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29-30). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild difficulties in activities of daily living and moderate difficulties in social functioning and concentration, persistence and pace, with no episodes of decompensation of an extended duration. (R. 29).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the additional limitations that claimant can perform simple, routine repetitive tasks in a stable, low-stress work setting with minimal interpersonal/social

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

demands, i.e. no more than occasional changes in work setting, no more than occasional decision-making, and no more than occasional supervision or contact with supervisors, co-workers, and members of the public, dealing primarily with things rather than people for work-related activities. (R. 30). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 31). At step four, the ALJ concluded Claimant is not capable of performing his past relevant work. (R. 33-34). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 34-35).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of the administrative hearing, Claimant was 41 years old. (R. 46). He lives with his wife and ten-year-old step child in a home that he owns. (R. 54). Claimant graduated from high school and took some photography courses at the community college, but has no secondary degree. (R. 47). Claimant was in special education classes throughout school, has difficulty learning new things, and was diagnosed with borderline intellectual functioning. (R. 56-57). Claimant's mother works at a bank and she handles his finances, including paying his bills. (R. 65-66). Sometimes she attends his doctor's appointments, but he mostly goes alone. (R. 67).

Claimant last worked as a custodian at a high school from 1998 until July 9, 2009, the alleged onset date. (R. 47-48). His job duties as custodian included cleaning rooms, emptying trash cans, mowing grass, scrubbing, waxing and buffing the floors, and routine maintenance. (R. 48). During his last year of work, Claimant missed one to two days a week due to his health problems. (R. 66). In 2009, Claimant got a new supervisor who wanted the work done faster and Claimant could not

5

keep up so he quit and filed for disability. (R. 50). Claimant was awarded disability from the county and continues to receive monthly disability payments in the amount of $1,100.00,[2] as well as health insurance. (R. 50, 55, 74). Claimant also worked at a tackle shop from 1996 to 1998 pulling inventory to fill customer orders. (R. 48-49). Claimant started as a stocker but could not lift heavy items so he was assigned to pulling. (R. 49). Claimant stopped working at the tackle shop because the pace of the work was too fast and he was making too many mistakes. (R. 49-50).

Claimant explained numerous medical conditions supporting his disability claim and his inability to work full-time. Claimant experienced so much pain in his back and legs due to fibromyalgia that at times he could not bend over, which made it very difficult to work. (R. 51-52). Some days Claimant has little pain and other days his pain is severe. (R. 54). He estimated that fifty percent of the time he experiences a high level of pain. *Id.* He has tried several pain medications, but most make him nauseated and so he uses pain medication infrequently. (R. 52-53). Claimant saw a pain management specialist and a fibromyalgia specialist for a time, but his appointments included three to four hours of treatment, so he was missing too much work and had to stop going. (R. 64, 76). Physical therapy and massage do help relieve Claimant's fibromyalgia related pain, but he no longer receives massage treatments because they are not covered by insurance. (R. 58-59).

Claimant does not handle stress well and takes anxiety medication. (R. 52, 56). Claimant's anxiety caused him to be nauseated roughly three time a week at work and sometimes he would leave work early. (R. 58). Claimant also has irritable bowel syndrome related to his anxiety and

---

[2] Claimant testified he receives $1,400.00 monthly, but his mother who manages his finances testified he actually receives $1,100.00. (R. 50, 74).

6

fibromyalgia. (R. 57). He sometimes takes Tramadol for headaches, but it causes dizziness so he only uses it when his headaches are severe. (R. 52).

Since Claimant stopped working he typically stays in bed until 11:30 a.m. or noon because he has trouble sleeping at night due to symptoms from his fibromyalgia. (R. 59). After getting up he takes a hot bath, which provides relief. *Id.* If Claimant is not in too much pain, he volunteers for two or three hours, two to three days a week, at a thrift store helping people look for items or unloading cars, which he does because he does not like to stay in bed all day. (R. 59-60). When he is volunteering at the thrift store, Claimant walks more slowly than most people, sometimes utilizing a cane, and does not lift anything heavy, which he characterized as 25 pounds. (R. 61). Claimant does not believe he is capable of full-time work due to his fibromyalgia pain and irritable bowel syndrome, which affect him most every day. (R. 63).

### C. Flora Sue Hubbard's Testimony at the Administrative Hearing

Claimant's mother, Flora Sue Hubbard, testified at the administrative hearing. (R. 68-75). She indicated Claimant had a learning disability and several health problems from birth. (R. 69). A physical therapist worked with Claimant as a child to develop his motor skills. *Id.* Hubbard helped him with school work and currently manages his finances because it was too frustrating trying to teach Claimant to do it on his own. (R. 69-70). She also assisted him in completing the paperwork to purchase the double-wide mobile home in which he lives. (R. 70). Hubbard indicated she attends Claimant's doctor's appointments because he has difficulty communicating his thoughts and she wants to ensure his doctors understand his health issues. *Id.*

Hubbard testified that Claimant missed 26 days in the last school semester he worked due to his health issues. (R. 71-72). She indicated Claimant had three surgeries in 2009, including an

7

esophageal wrap, gall bladder removal, and intestinal reconstruction, all of which related to a prior surgery Claimant had as an infant to repair a defective valve at the base of his stomach. (R. 72). Claimant missed almost a year of work due to these surgeries, and thereafter when he returned to work Claimant continued to have difficulty due to his fibromyalgia and stress. (R. 72). Hubbard believes Claimant's stress has improved since he stopped working, but she does not believe he could sustain full-time work due to his pain. (R. 73-74).

### D.     Vocational Expert's Testimony at the Administrative Hearing

Dr. Ann Neulicht testified as a VE at the administrative hearing. (R. 77-84). After the VE's testimony regarding Claimant's past work experience (R. 78), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed the following hypothetical:

> Individual is limited to performing work at the light level of exertion as that term is defined in the regulations which includes lifting, carrying, pushing and/or pulling up to 20 pounds occasionally and 10 pounds frequently, sitting, standing and/or walk for periods up to six hours each in an eight-hour day with normal breaks. The individual would be limited to performing simple, routine, repetitive tasks in a stable low-stress work setting with minimal interpersonal demands . . . . So basically, a low-stress work setting, further defined as . . . requiring no more than occasional decision-making or changes in the work setting. So occasional changes in the work setting, occasional decision-making. No more than occasional supervision or contact or social interaction with supervisors, coworkers, members of the public, would need a job that allows the individual to deal with [things or objects], rather than people as part of the work-related activity.

(R. 79-80). The VE testified that Claimant's past relevant work exceeds the exertional limitations of the hypothetical. (R. 80). However, the VE opined that the following jobs would be available and consistent with the limitations of the hypothetical: office cleaner, Dictionary of Occupational Titles ("DOT") code 323.687-014, light in exertion and unskilled with an SVP of 2; photocopying

8

machine operator, DOT code 207.685-014, light in exertion and unskilled with an SVP of 2; and garment sorter, DOT code 222.687-014, light in exertion and unskilled with an SVP of 2. (R. 80-81). The VE confirmed that her testimony was consistent with the DOT and that the jobs listed require no more than occasional decision making or changes in work setting and simple, routine, repetitive tasks, which she equated to a reasoning level involving concrete decisions based on standardized situations and unskilled work. (R. 81-82). The ALJ added the additional limitation of missing one to three days of work a month, and the VE responded this would preclude substantial gainful activity. (R. 82-84).

## V. DISCUSSION

### A. Consideration of a Disability Determination of Another Governmental Agency

Claimant first contends that the ALJ failed to adequately consider a state agency determination that Claimant was disabled. Pl.'s Mem. at 6-8; Pl.'s Resp. in Opp'n [DE-30] at 1-4. The Commissioner contends that this evidence was not before the ALJ, but that it was made part of the record and adequately considered by the Appeals Council. Gov't's Mem. [DE-28] at 9-10.

The regulation regarding a disability determination by another agency provides as follows:

> A decision by . . . any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency . . . that you are disabled . . . is not binding on us.

20 C.F.R. § 404.1504. Nevertheless, another governmental agency's decision that a claimant is disabled is "evidence" that must be considered. 20 C.F.R. § 404.1512(b)(5); S.S.R. 06-03p, 2006 WL 2329939, at *6-7 (Aug. 9, 2006). Moreover, "the adjudicator should explain the consideration given to these decisions in the notice of decision . . . ." S.S.R. 06-03p, 2006 WL 2329939, at *7; *see,*

9

*e.g., Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668312, at *4 (E.D.N.C. Nov. 5, 2010) ("Decisions by other agencies as to the disability status of a Social Security applicant are considered so probative that the ALJ is required to examine them in determining an applicant's eligibility for benefits.").

In a decision dated September 7, 2010, Claimant's application for long-term disability benefits under the Disability Income Plan of North Carolina ("DIPNC") was approved by the plan's medical board effective July 8, 2010, approximately two weeks prior to the filing of Claimant's application at issue in this case. (R. 394). Neither the DIPNC decision nor the underlying medical reports related to the DIPNC eligibility review process (R. 394-423), were submitted to the ALJ, but rather these documents were provided to the Appeals Council and made part of the record after Claimant requested review of the ALJ's decision. (R. 2, 6, 39). However, at the hearing Claimant testified that in 2009 he could not maintain the pace required to perform his job as a custodian and filed for disability from the state, which he was awarded and continues to receive. (R. 50-51, 55). The ALJ acknowledges in the decision that "claimant's alleged onset date is in July 2009, when he retired on disability from his job as a school system custodian" and that "claimant testified that he received disability through the county/state" (R. 28), but the ALJ fails to explain what if any consideration was given to the state's disability determination (R. 28-35). The Appeals Council, in denying review, indicates that "the additional evidence listed on the enclosed Order of Appeals Council" was considered, which includes the DIPNC decision and supporting documents, but fails to explain the consideration given. (R. 2, 6). The failure of the Commissioner to examine and explain the consideration given the DIPNC disability determination requires remand.

In a recent case materially indistinguishable from the instant case, this court ordered remand

10

due to the "absence of any explanation by the Commissioner of his assessment of the [state] Medicaid decision...." *Hebert v. Colvin*, No. 4:12-CV-141-D, 2013 WL 3776276, at *5 (E.D.N.C. July 17, 2013). In the *Hebert* case, as here, the claimant testified at the hearing that he was receiving state disability benefits, but did not submit a copy of the decision to the ALJ and rather submitted a copy of the decision to the Appeals Council. *Id.* The Appeals Council, consistent with its actions in this case, stated that the additional evidence submitted was considered, but made no specific findings with respect to the state disability determination. *Id.* The court observed that "[f]ailure to discuss a [state disability] decision has repeatedly been held by this court to require remand." *Id.* (citing *Batchelor v. Colvin*, No. 5:11-CV-533-FL, 2013 WL 1810599, at *2-3 (E.D.N.C. Apr. 29, 2013) (remanding case after rejecting argument based on *Shinseki v. Sanders*, 556 U.S. 396 (2009) and *Garner v. Astrue*, 436 F. App'x 224 (4th Cir. 2011) that failure to discuss a state disability decision regarding claimant was harmless); *Davis v. Astrue*, No. 7:10-CV-231-D, 2012 WL 555782, at *5 (E.D.N.C. Jan. 5, 2012) ("In the present case, the ALJ not only failed to explain the consideration given, but completely failed to even acknowledge the NCDHHS decision. In such cases, this Court has determined that remand is necessary to allow the ALJ to consider the NCDHHS decision and explain its consideration in the ALJ's analysis."), *adopted by* 2012 WL 555304 (E.D.N.C. Feb. 17, 2012); *Blount v. Astrue*, No. 4:10-CV-97-D, 2011 WL 5038367, at *6-7 (E.D.N.C. Sept. 14, 2011), *adopted by* 2011 WL 5042063 (E.D.N.C. Oct. 24, 2011); *Walton v. Astrue*, No. 7:09-CV-112-D, 2010 WL 2772498, at *1 (E.D.N.C. Jul. 9, 2010) (remanding for further consideration where "the ALJ said nothing [regarding the NCDHHS decision], and SSR-06-3p requires more than 'nothing'"); *Bridgeman v. Astrue*, No. 4:07-CV-81-D, 2008 WL 1803619, at *1, *10 (E.D.N.C. Apr. 21, 2008) (remanding for further explanation where ALJ mentioned Medicaid

11

ruling, but dismissed its relevance without discussion)).

Moreover, this court has rejected the very the argument made by the Commissioner here–that the Appeals Council is not required to articulate reasons supporting its findings–in concluding that "it is not the failure of the Appeals Council per se to make the required findings that requires remand, but rather the failure of the Commissioner, at any level, to do so." *Hebert*, 2013 WL 3776276, at *6. Likewise, the Commissioner's argument that a lack of rationale in the state disability determination renders it immaterial has been found by this court to be meritless. *See id.* (rejecting argument "that the cursory nature of the [state] decision renders it immaterial and therefore obviates any remand for findings regarding the decision") (citing *Blount*, 2011 WL 5038367, at *6-7; *Walton*, 2010 WL 2772498, at *1)). Accordingly, it is recommended that this case be remanded to the Commissioner to examine and explain the consideration given to the DIPNC disability determination.[3]

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-23] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-27] be DENIED, and the case be remanded to the Commissioner for further proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

---

[3] Claimant's remaining contentions will not be addressed as they are moot where the first ground for remand asserted by Claimant is determinative. *Hebert*, 2013 WL 3776276, at *6.

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the __12__ day of January 2015.

Robert B. Jones, Jr.
United States Magistrate Judge